Ross T. Johnson
KOVACICH SNIPES, P.C.
P.O. Box 2325
Great Falls, MT 59403
(406) 761-5595

Attorneys for Plaintiff

CLERK OF DISTRICT COURT
FAYE McWILLIAMS

18 JAN 11  PM 2:22

FILED

BY _____
       DEPUTY

### MONTANA EIGHTH JUDICIAL DISTRICT COURT, CASCADE COUNTY

| | |
|---|---|
| TIMOTHY MONIZ, | CAUSE NO. **DDV-18-0022** |
| Plaintiff, | **JOHN W. PARKER** |
| vs. | **COMPLAINT AND JURY DEMAND** |
| BNSF RAILWAY COMPANY, a for Profit Corporation; ROBINSON INSULATION COMPANY, a Montana Corporation; STATE OF MONTANA, by and through the DEPARTMENT OF ENVIRONMENTAL QUALITY; MONTANA STATE BOARD OF HEALTH, DIVISION OF DISEASE CONTROL; DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES; DEPARTMENT OF LABOR AND INDUSTRY; MONTANA STATE DEPARTMENT OF HEALTH, DIVISION OF AIR POLLUTION CONTROL AND INDUSTRIAL HYGIENE; and DOES A-Z, Inclusive, | |
| Defendants. | |

COMES NOW Plaintiff, Timothy Moniz, demanding trial by jury, and for his complaint against the Defendants alleges as follows:

### PARTIES

1.

Plaintiff, Timothy Moniz, is a natural person and a citizen of the State of Montana.

2.

Defendant BNSF Railway Company (BNSF) is a corporation for profit organized and existing under the laws of Delaware. BNSF does business in the State of Montana. BNSF is the surviving entity of the merger of Burlington Northern Railroad Company (BN) and the Atchison, Topeka and Santa Fe Railway Company (Santa Fe). As a result of the merger between BN and Santa Fe and by operation of law, BNSF assumed liability for all claims which could have been brought against BN. For purposes of this Complaint and Jury Demand, the allegations and claims against BN are also allegations and claims against BNSF, as successor corporation.

3.

BN was a business corporation for profit, organized and existing under the laws of Delaware. For many years, BN did business within Montana. BN engaged in conduct that resulted in the accrual of this tort action in the State of Montana. BN is or was the surviving entity of the 1970 merger of Great Northern Railway Company (Great Northern); Northern Pacific Railway Co. (Northern Pacific); the Chicago, Burlington & Quincy Railroad Co. (CB&Q); and the Spokane, Portland and Seattle Railway Co. (SP&S). As a result of said merger; as a result of the merger agreement between Great Northern, Northern Pacific, CB&Q, and SP&S; and by operation of law, BN assumed liability for all claims which could have been brought against Great Northern and Northern Pacific.

4.

Defendant Robinson Insulation Company (Robinson Insulation) was a Montana business corporation for profit, that negligently and carelessly designed, developed, assembled, and operated a vermiculite expansion plant to expand asbestos contaminated vermiculite at its principal place of business in Great Falls, Cascade County, Montana.

5.

Robinson Insulation engaged in conduct that resulted in accrual of this tort action in Cascade County, Montana.

6.

Defendant the State of Montana is a governmental entity.  The Department of Environmental Quality; the Montana State Board of Health, Division of Disease Control; the Department of Public Health and Human Services; the Department of Labor and Industry; and the Montana State Department of Health, Division of Air Pollution Control and Industrial Hygiene, are or were agencies of the State.

7.

The State of Montana is liable for the unlawful conduct of The Department of Environmental Quality; the Montana State Board of Health; the Department of Public Health and Human Services; the Department of Labor and Industry; and the Montana State Department of Health, Division of Air Pollution Control and Industrial Hygiene.

8.

The true names and capacities of the Defendants named herein as Does A-Z, inclusive, are unknown to Plaintiff at this time, who therefore brings this action against said Defendants by fictitious name.  Plaintiff will seek leave to amend the complaint to state the true names and capacities of Defendants Does A-Z when the same have been ascertained, together with further charging allegations, as appropriate. Plaintiff is informed, believes, and thereon alleges that each of said fictitiously named Defendants may be legally responsible in some manner for the occurrences alleged herein and that Plaintiff's damages as alleged herein may have been proximately caused in part by unlawful acts or omissions of said fictitiously named Defendants.

## JURISDICTION AND VENUE

### 9.

This Court has subject matter jurisdiction over this action and personal jurisdiction over each of the parties.

### 10.

Venue in this action is proper in Cascade County, Montana, because one of the Defendants, Robinson Insulation, engaged in tortious conduct within Cascade County and is a resident of Cascade County.

## GENERAL ALLEGATIONS

### 11.

Asbestos is a deadly substance consisting of tiny needle like fibers that easily penetrate and lodge in the linings of lungs. Human lungs are unable to remove asbestos speared into lung tissue. The asbestos spears cannot be washed out of lung tissues by blood. Affected lung areas become inflamed, in time heavily scarred, and ultimately nonfunctional. For one with this disease process, it becomes increasingly more difficult to breathe. Ultimately, the person suffocates.

### 12.

The sinister effects of asbestos exposure are compounded by the fact that diseases caused by asbestos have long latency periods. It is not uncommon for persons to be first diagnosed with potentially fatal diseases many years following their initial exposure to asbestos.

13.

At all times relevant to this action, Defendants had actual knowledge that asbestos is an extremely hazardous substance and that exposure to asbestos causes potentially fatal diseases, including asbestosis, lung cancer, and mesothelioma.

14.

For many years Plaintiff lived, worked, and recreated in proximity to the railroad Defendants' tracks. As a result of railroad business activities, Plaintiff was for many years exposed to deadly asbestos contaminated vermiculite which was negligently and recklessly transported, leaked, dropped, and discarded from rail cars used to transport vermiculite to and from expansion plants located throughout the United States.

15.

Plaintiff was also exposed to Robinson Insulation's unreasonably dangerous asbestos contaminated products, which Robinson Insulation unlawfully placed in the stream of commerce for use and consumption by the public.

16.

For many years, Robinson Insulation obtained asbestos contaminated vermiculite in Lincoln County, Montana. Said vermiculite was transported by rail by the railroad Defendants from Lincoln County to Great Falls, Cascade County, Montana, where Robinson Insulation expanded the asbestos contaminated vermiculite and processed it into various manufactured products.

17.

After expanding the deadly asbestos contaminated vermiculite and processing it into manufactured products, Robinson Insulation sold said vermiculite and vermiculite products use and for resale in Libby, Montana. Said expanded asbestos contaminated vermiculite

and vermiculite products were transported from Great Falls back to Libby by the railroad Defendants and delivered to the Libby for resale.

18.

For decades prior to 1990, Zonolite Company and W.R. Grace & Company (W.R. Grace) owned and operated a vermiculite mine and mill near Libby, Lincoln County, Montana. The vermiculite mined by Zonolite Company and W.R. Grace in Lincoln County was laced with deadly asbestos fibers that were released into air, soil, and water during mining and milling activities.

19.

The acts and omissions giving rise to the State of Montana's liability for Plaintiff's asbestosis were carried out by the Department of Environmental Quality; the Department of Labor and Industry; the Department of Public Health and Human Services; the Montana State Board of Health; the Montana State Department of Health, Division of Air Pollution Control and Industrial Hygiene; and/or other agents, servants, and employees of the State of Montana. Each of these Departments and/or agents, servants, and employees is or was an institution and/or agent of the State of Montana. (The State of Montana and each of the Departments and their predecessors and successors will hereinafter be referred to collectively as the "State.")

20.

At all times relevant to this action, the State had actual knowledge that vermiculite, originating from the business activities of Zonolite Company and W.R. Grace & Company (hereinafter referred to from time to time as "Grace") in Lincoln County, was contaminated with asbestos. The State had actual knowledge that asbestos was and is extremely

hazardous and that exposure to asbestos causes potentially fatal diseases, including asbestosis, lung cancer, and mesothelioma.

21.

Plaintiff, his family members, and/or others with whom Plaintiff came into contact were employed or worked at or near the vermiculite mine and mill owned and operated by Zonolite Company and W.R. Grace & Company.  Workers and miners at the vermiculite mine and mill worked in an environment that caused them to be exposed to and to inhale asbestos dust.  Grace provided its workers no coveralls and no showers.  As a result, workers went home with asbestos dust on their clothing and in their cars, thereby contaminating family members and others in the Libby community with asbestos fibers. Plaintiff was thereby exposed to asbestos fibers at work or while going about their daily activities of life in Libby, Lincoln County, Montana.

22.

Without knowledge of the nature and extent of the asbestos hazard, Plaintiff was denied the options of avoiding exposure, demanding protective devices, demanding safer operations, changing jobs, or otherwise protecting themselves from the abnormally dangerous activities at the mine.

23.

Since the 1950's, the State has been responsible for oversight of the vermiculite mine and mining facilities located in Lincoln County, Montana, and owned by Zonolite Company. (In 1963, W.R. Grace & Company acquired ownership and took over operation of the Libby vermiculite mine and mill from Zonolite Company.)

24.

RCM 1947 § 69-105 (effective 1955 to 1967) provided the State Board of Health "shall . . . have general supervision of the interests of health and life of the citizens."

25.

RCM 1947 § 69-201 (effective 1955 to 1967) provided that the "Board . . . shall . . . execute all of the duties in the field of industrial hygiene."

26.

RCM 1947 § 69-4106 (effective 1967 to 1971) provided that the Board "shall . . . (d) . . . enforce . . . for the preservation of public health and prevention of disease."

27.

RCM 1947 § 69-4207, now § 50-70-102, MCA (effective 1971 to date) provides for a State policy that "(1) will protect human health and safety . . . (2) [and for a ] . . . program of abatement . . . of occupational diseases."

28.

RCM 1947 69-105 (effective 1955 to 1967) provided that the Board of Health "shall make sanitary investigations and inquiries regarding . . . employment . . ."

29.

RCM 1947 § 69-202 (effective 1955 to 1967) provided that the Board of Health "shall . . . (3) make investigations of the sanitary conditions . . . in the various industries."

30.

RCM 1947 § 69-4203 (effective 1967 to 1971) provided that the Board of Health "shall . . . investigate the conditions of work . . ."

31.

RCM 1947 § 69-4110, now § 50-1-202, MCA (effective 1967 to date) provides that the Board "shall . . . (2) study conditions effecting citizens . . . (3) make investigations . . ."

32.

RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974 - 1999) provided that the Board "shall . . . (6) determine . . . degree of hazard at any workplace."

33.

RCM 1947 § 69-202 (effective 1955 to 1967) provided that the Board "shall . . . (5) . . . work with such industries to remedy unsanitary conditions."

34.

RCM 1947 § 69-4203 (effective 1967 to 1971) provided that the Board "shall . . . (4) . . . cooperate with the industry . . . in . . . correcting conditions which are hazardous to health."

35.

RCM 1947 § 69-4211, now § 50-70-105, MCA (effective 1971 to 1999) provided that the Board "shall . . . (3) . . . issue orders necessary to carry out this act."

36.

RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974 to 1999) provided that the Board "shall (1) enforce board orders . . . (3) develop . . . plan for . . . abatement . . . of occupational diseases."

37.

The Montana Constitution, Article IX § 1(1) provides "the State and each person shall maintain and improve a clean and healthful environment in Montana . . ."

38.

RCM 1947 § 69-105 (effective 1955 to 1967) provides that the Board "shall gather information . . . as it may deem proper for diffusion."

39.

RCM 1947 § 69-4110, now § 50-1-202, MCA (effective 1967 to date) provides that the Board "shall . . . (3) make investigations, disseminate information . . ."

40.

RCM 1947 § 69-4211.1, now § 50-70-105, MCA (effective 1974 to 1999) provides that the Board "shall . . . (7) disseminate information."

41.

RCM 1947 § 69-4216(1), now § 50-70-117, MCA(1) (effective 1971) provides that, in the absence of a generalized hazardous emission in the workplace, if emissions from an operation cause imminent danger to human health, the State may order the person responsible for the operation to reduce or discontinue emissions immediately.

42.

RCM 1947 § 69-4216(2), now § 50-70-117, MCA(2) (effective 1971) provides that if a hazard at a workplace exists that creates an emergency requiring immediate action to protect human health, the state shall order persons causing or contributing to the hazard to reduce or discontinue immediately the emissions creating the hazard.

43.

In 1956, the State began conducting industrial hygiene studies at the vermiculite mine and mill operation at Libby, Montana. Over the next 12 years, that is from 1956 to 1968, the State conducted at least five industrial hygiene studies at said mine and mill and

corresponded with Grace management officials concerning Grace's asbestos health hazard on at least three other occasions.

44.

The 1956 industrial hygiene study by the State Board of Health, Division of Disease Control, of the Zonolite mine and mill operation was undertaken "to determine if any of the components of this company were detrimental to the health of the employees." The 1956 report, p. 3, found high dust levels, that the dust contained asbestos, and that "the asbestos dust and the dust in the air is of considerable toxicity." The report cited the 1954 edition of Drinker and Hatch, Industrial Dust, which describes the lung damage done by asbestosis as "permanent" (p. 37). Drinker and Hatch note the 1947 total of 160 deaths from asbestosis in Great Britain (p. 39). Drinker and Hatch also demonstrate a ten times greater than normal incidence of lung cancer in asbestosis cases (p. 46). The State's 1956 report found dust levels at the Libby vermiculite mine and mill greatly exceeding the asbestos limit, and recommended dust control measures. The 1956 report, p. 6, states:

> Full recognition should be given to the fact that direct control measures alone are usually not enough to insure safe working conditions. The method of operations, proper maintenance of equipment and of housekeeping are equally essential to maintain healthful conditions.

> That until such time as the repair and maintenance of both the exhaust and ore conveying systems have been complete, all the men in the dry mill be provided with and required to wear an adequate respirator.

The State took no further action concerning the asbestos threat in Libby during the remainder of 1956 or during 1957.

45.

In 1958, the State Board of Health, Division of Disease Control, undertook another industrial hygiene study of the Zonolite mine and mill operation "to determine if any of the components of this company found to be detrimental to the health of the employees during

the last study in August, 1956 had been reduced or alleviated since that time." The report again found asbestos dust levels greatly exceeding the asbestos limit, and recommended dust control measures. The report cites medical literature showing that asbestosis is "a progressive disease with a bad prognosis," often fatal. The report, at p. 8, finds that asbestos dust "concentrations had, as yet, not been reduced to a satisfactory level over all . . .. The dry mill still required a considerable amount of work to reduce the dust in this area to an acceptable level." No further action was taken by State Board of Health, Division of Disease Control, in 1958, 1959, 1960, or 1961.

46.

In 1959, the Montana State Tuberculosis Sanitarium treated Glenn Taylor, a Libby Zonolite mine worker, for shortness of breath and asbestosis.

47.

In 1961, the State, through formal death certificate reporting procedures, had notice that Glenn Taylor, a millwright at Zonolite Company died of asbestosis, and that Charles Wagner, a mechanic at Zonolite Company in Libby, died of pulmonary fibrosis.

48.

In 1962, the State Board of Health, Division of Disease Control, undertook an industrial hygiene study of the Zonolite mine and mill operation in Lincoln County, Montana "to determine if any of the components of the operations continued to be a threat to the health of the employees." The report again found dust levels far in excess of the asbestos limit, and recommended dust control measures. The report concludes "as indicated in the findings of this study, it appeared that no progress had been made in reducing dust concentrations in the dry mill to an acceptable level and that, indeed, the dust concentrations had been increased, substantially, over those in the past."

49.

In 1963, the State Board of health, Division of Disease Control, undertook an industrial hygiene study of the Grace/Zonolite mine and mill. The report again found dust levels greatly exceeding the asbestos limit, and recommended dust control measures. The report, at p. 3, found a "hazardous condition existing at this plant." No further action was taken in 1963.

50.

In April, 1964, the State Board of Health, Division of Disease Control, undertook an industrial hygiene study of the vermiculite mine and mill "to determine if compliance with previous recommendations for the control of dust had been achieved." The report again found asbestos dust levels greatly exceeding safe limits, and recommended asbestos dust control measures. The report also cited an article by Dr. Irving Selikoff (1964), finding dangerous levels of asbestos disease in asbestos insulation workers with "light intermittent exposure to asbestos." The State knew that Libby workers had heavy and frequent exposure to asbestos. The 1964 report states at p. 3. "the asbestos content of the material with which you are working appears to provide some serious potential for the development of disease if not properly controlled. In addition, the discharge of large volumes of asbestos-laden dust at ground levels sets up a condition where all members of the plant can be exposed in addition to those who work in the dry mill." The 1964 report, p. 3, also warns of possible widespread carcinogenic air pollution."

51.

In September, 1964, the State Board of Health, Division of Disease Control, undertook an industrial hygiene study of the Grace/Zonolite mine and mill "to determine if the concentrations were excessive as has been found in many previous studies." The

report again found dust levels greatly exceeding the asbestos limit, and recommended dust control measures.  The report states at p. 3 "the dust discharged at ground level from the main dust collection fan was continuously contaminating the whole plant work area and needs to be either raised substantially so the dust-laden air discharges substantially above the plant area or that cleaning be provided.  There was much reentry of this dust into the working environment."  The report concludes at p. 3 with the "hope that continued work to reduce dust concentrations will be done and that a continuous operation at acceptable levels will be achieved soon."

52.

In 1964, the State, through formal death certificate reporting procedures, had notice that Albert Barney, a mill worker at Zonolite in Libby, Montana died of cor-pulmonale.

53.

In 1966, the State, through formal death certificate reporting procedures, had notice that Walter McQueen, a miner from Libby died of asbestosis.

54.

In 1967, the State Board of Health, Division of Disease Control, undertook an industrial hygiene study of the Grace/Zonolite mine and mill "to determine compliance with previous recommendations."  The report, at p. 2, concluded "as in the past, the need for particularly close attention to the functioning of the dust control system, condition of duct work, . . . was apparent.  It was also apparent that a strict housekeeping program must be maintained."

55.

In November 1967, evidence was presented to the Chairman of the State Industrial Accident Board that another worker at the Grace/Zonolite mine and mill had been diagnosed with asbestosis from work in the warehouse.

56.

By 1968, the State's reports to W.R. Grace discussed the direct link between exposures to the zonolite mines' asbestos contaminated vermiculite and terminal lung cancers and stated that asbestos dust was of "considerable toxicity and that workers exposed to the dust were looking at serious lung and heart disease." This information was concealed from the public. In bold letters, the State wrote on many of the documents:

**THIS REPORT IS CONFIDENTIAL AND IS NOT FOR DISTRIBUTION EXCEPT TO THE MANAGEMENT OF THE ZONOLITE COMPANY.**

57.

All of the reports and correspondence from the State to Zonolite Company or to W.R. Grace were directed exclusively and confidentially to the management of Zonolite Company and/or Grace. The State authored multiple industrial hygiene reports concerning the vermiculite mine on Zonolite Mountain and made it clear on the cover of each such report that these industrial hygiene reports were not to be distributed to anyone other than the management of Grace and/or Zonolite Company.

58.

Each of the above described industrial hygiene study reports prepared by the State discussed the high dust concentrations and the high asbestos content of the dust. Beginning in 1956, the reports discussed the extremely toxic nature of the asbestos dust

and the debilitating and life threatening nature of the lung disease caused by exposure to asbestos.

59.

By 1971, 14 workers at the Grace mine and mill had died of asbestos disease.

60.

In 1974, the Montana State Department of Health performed an investigation of the airborne asbestos exposure at the Grace mine and mill.  No action was taken to protect workers, their families, and the public.

61.

From 1967 to about 1974, Grace regularly reported on the status of dust control at its operations in Libby to the State.

62.

All of the above described reports of the Division of Disease Control, were delivered to W.R. Grace, or its predecessor.  None of the reports were made public, nor were the Grace workers or their families warned of what the State had found.

63.

From 1971 to 1976, a number of federal agency inspections of the Grace mine and mill showed violations of asbestos dust control requirements.  The State was either a participant in said inspections or was copied in on the reports of said inspections.  Federal inspections in 1971, 1972, 1973, 1974 and 1975 found dangerous levels of asbestos dust at the Grace mine and mill.  Again the State did nothing to warn the workers, their families, or the public of the dangers of asbestos disease.

64.

From 1976 to a date after 1990, the State continued to inspect the Grace mine and mill for occupational health hazards.   In the 1980s until 1998, the State had many occasions to review and act upon matters relating to Grace operations.  The State did not warn or act to protect Plaintiff, fellow employees, their families, or the public.

65.

The State has known for decades that the asbestos dust released into the air at Libby and in Lincoln County was of "considerable toxicity and that workers exposed to the dust were looking at serious lung and heart disease."  The State has also known for decades of the asbestos-cancer link at the Zonolite Company and Grace Libby facility and that Libby workers and their families were at increased risk for developing asbestosis and lung cancer.

66.

The State has known for decades that extended exposure to asbestos at the Grace Libby facility and in Lincoln County was unreasonably dangerous and hazardous to the health of workers, their families, and the public at large, but the State failed to make this information public.  Rather than enforcing the law by compelling Zonolite Company and Grace to clean up their deadly operations, the State effectively became the accomplice of Zonolite Company and Grace and aided and abetted Grace's concealment of this enormous public health problem.  Lack of public knowledge of the enormity of the Libby asbestos disaster continued until 1999 when media reports began to expose the cover up and the extensive harm it had caused.

67.

The State's complicity in Grace's egregious misconduct continued well into the 1990's. In its own internal memo dated March 4, 1992, the Montana Occupational Health Bureau stated:

> Ten to twenty workers are dismantling the mine and buildings with asbestos dust throughout, without protective clothing or gear. This activity has occurred at the industrial area already and is proceeding to the screening and processing plant. The ground is covered with vermiculite/asbestos. Rainy Creek, approximately 50-100 feet from the screening plant, has asbestos getting into it from the activities that are occurring. Four grain storage bins, used to store the ore, are located along the Kooteneai River, of which, the bin's integrity are questionable.

The citizens of Lincoln County, including Plaintiff, continued to be exposed to abnormally high levels of asbestos as a result of Grace's continued operations in Lincoln County into the 1990's. Nothing was done by the State to notify or to protect Plaintiff from the perils of this extraordinary human health hazard.

68.

In 1994, Michael Crill, a former Grace employee, warned the State that the people who had purchased Grace's "screening plant property," along the banks of the Kooteneai River, were in grave danger because of the asbestos waste located there. Mr. Crill also advised the State that clouds of asbestos contaminated dust were being created when logging trucks used the road leading to and from the Zonolite Mountain mine site. Mr. Crill actually met with a State inspector concerning the asbestos contamination. The State inspector promised to take action on Mr. Crill's information but never did anything to warn the public or correct the problem.

69.

In 1995, Mr. Crill realized that the State had not acted on the critically important information he had provided.  Therefore, he wrote to the United States Environmental Protection Agency (EPA).  The EPA notified the State.  The State did nothing.

70.

In approximately 1998, another Libby citizen, Gayla Bennefield, notified the Montana Governor's office that the people of Libby were in danger because of the asbestos hazards created by Grace's operations.  Again, nothing was done and nothing was made public.

71.

In the fall of 1999, the Seattle Post Intelligencer, as well as several Montana newspapers, broke the story that mining and milling operations on Zonolite Mountain had subjected the citizens in and around Libby and Lincoln County, Montana, to grave health risks.

72.

Subsequently, the EPA conducted air tests and took soil samples disclosing the enormity of the human health problem in Libby and Lincoln County, Montana.  The EPA reported its findings in May, 2000, unfortunately too late for many Lincoln County citizens, who had already contracted deadly asbestos related diseases.  The May, 2000, EPA report stated that cumulative exposures to tremolite fibers at facilities in Lincoln County are likely to present an ongoing endangerment of residents, workers and visitors in the area.  The EPA's sampling efforts demonstrated "abundance of fibrous minerals in media sampled." The report went on to state as follows:

> The chemical nature of the fibers identify them as asbestiform amphiboles known to cause multiple cancers in humans and animals at multiple target organs.  These fibers are particularly dangerous when inhaled and are directly related to production of mesothelioma, a particularly lethal

neoplasm of the mesodermal lining of the lung.  Additionally, amphibole mineral fibers can cause a wide variety of malignant lung tumors.

In addition to the carcinogenic effects associated with tremolite fibers, non-malignant asbestosis can result in debilitating and lethal respiratory disease.  Tremolite fibers can cause thickening and fibrosis of the pleural lining of the lung and scarring of the lung parenchyma.  The resulting loss of lung compliance and respiratory capacity can progress over the course of many years.

73.

The State did nothing to disseminate to Plaintiff and the public this critically important information relating to the extreme and imminent human health hazards associated with vermiculite mining, activities in Lincoln County, Montana.  The State thereby aided and abetted Zonolite Company and Grace in the concealment of this human health disaster from the public.  The State has acted in concert with Grace and Zonolite Company to create, to enhance, and to conceal the human health disaster from the public.  The State's misconduct continued for decades.  The State conducted meetings with high level Grace officers and officials, but never notified Plaintiff, other Grace employees, their families, or the public concerning the nature and extent of harm from exposure to Grace's asbestos dust.  Plaintiff remained ignorant of the nature and extent of the life threatening risk involved in exposure to the asbestos generated and released by Zonolite and Grace until it was too late to protect him from harm.

74.

The State's acts and omissions alleged herein constitute gross negligence and reckless disregard for obligations the State owes to its citizens, including Plaintiff.  Said acts and omissions resulted in overexposure of Plaintiff to deadly asbestos fibers.  Asbestos poisoning could have been substantially and meaningfully reduced or eliminated

for individuals living and working in Lincoln County had the State acted reasonably and responsibly.

75.

Defendants' unlawful conduct caused Plaintiff's exposure and/or ingestion of unreasonably dangerous asbestos contaminated vermiculite as described herein, ultimately causing his asbestos related restrictive lung disease.

76.

At all times during Plaintiff's period of exposure to asbestos contaminated vermiculite, generated and released by Defendants' business activities, Defendants knew that extended exposure to asbestos was unreasonably dangerous and hazardous to human health. Nevertheless, Defendants concealed and failed to disclose such knowledge to their employees, the public at large, and Plaintiff. Defendants gave no indication that it was unsafe and a serious health hazard for Plaintiff to be exposed to asbestos generated and released by Defendants' abnormally dangerous business activities. Plaintiff was at all times ignorant of the nature and extent of the life threatening risk involved in exposure to the asbestos generated and released by Defendants' abnormally dangerous business activities.

77.

As a direct and proximate result of Defendants' unlawful conduct, Plaintiff was exposed to deadly asbestos contaminated vermiculite.

78.

As a direct and proximate result of exposure to asbestos-laced vermiculite generated and released by Defendants' business activities, Plaintiff contracted asbestos related disease.

79.

All of the above referenced acts and omissions were maliciously done by Defendants with the intent that innocent persons, including Plaintiff, would remain unaware of the hazards and extreme health risks associated with exposure to asbestos resulting from Defendants' business activities for profit.

80.

Each act of negligence, carelessness, and recklessness; each intentional and malicious act or omission; and each violation of law or regulation alleged herein was committed by Defendants and/or employees or agents of Defendants, acting within the course and scope of employment or agency with Defendants and in the furtherance of the business interests of Defendants.   Each negligent, careless, reckless, intentional, malicious, and unlawful act or omission alleged herein is imputable to Defendants.

## FIRST CAUSE OF ACTION

### (Negligence - Against Railroad Defendants)

81.

Plaintiff realleges paragraphs 1 through 80 of the General Allegations and adopts the same as if fully set forth in this First Cause of Action.

82.

The railroad Defendants owed Plaintiff a duty to act with reasonable care concerning their business operations, so as not to jeopardize his health and welfare.

83.

The railroad Defendants breached their duty of care by negligently, carelessly and recklessly generating, handling, storing, releasing, disposing of, and failing to control and

contain unreasonably dangerous and hazardous asbestos created by and/or resulting from the defendants' for profit business operations.

84.

As a direct result of the breach of their duty of due care owed by the railroad Defendants and the resulting release of asbestos, Plaintiff was exposed to asbestos.

85.

The railroad Defendants knew that exposure to or ingestion of asbestos was unreasonably dangerous and hazardous to human health. The railroad Defendants knew that Plaintiff was inhaling harmful asbestos and vermiculite, but concealed such knowledge from Plaintiff. The railroad Defendants failed to protect the public, their employees, and Plaintiff from exposure to unreasonably dangerous and hazardous asbestos, the exposure to which was created by and resulted from these Defendants' for profit business operations.

86.

The railroad Defendants breached their duty of care to Plaintiff by causing Plaintiff to be repeatedly exposed to deadly asbestos fibers and/or asbestos contaminated materials and products produced and/or released as a result of these Defendants' abnormally dangerous business activities, thereby causing Plaintiff's asbestos related lung disease.

87.

Although the railroad Defendants knew or had ample reason to know that their acts or omissions created a high degree of risk and harm to Plaintiff, these Defendants deliberately acted in conscious disregard of and indifference to the risk imposed upon Plaintiff by his continued exposure to asbestos.

88.

The negligence of the railroad Defendants in addition to that hereinabove alleged, included, but were not limited to:

A.     Creating defective and unreasonably dangerous conditions;

B.     Failing to properly inspect for unsafe conditions;

C.     Failing to correct unsafe conditions;

D.     Failing to warn Plaintiff and the public of the hazards associated with exposure to asbestos and asbestos contaminated vermiculite;

E.     Failing to provide proper safeguards against exposure to asbestos;

F.     Failing to provide proper safeguards against release of an abnormally dangerous substance under their control;

G.     Improper and negligent supervision, which permitted the ultrahazardous and dangerous condition and exposure to persist;

H.     Failing to disseminate asbestos hazard information to Plaintiff and the public; and/or

I.     Failing to inform Plaintiff, or seeing that Plaintiff was informed, of the extreme asbestosis and cancer risk of asbestos.

89.

As a direct and proximate result of the negligence of the railroad Defendants, Plaintiff contracted life threatening asbestos related disease and sustained damages as herein alleged.

## SECOND CAUSE OF ACTION

### (Common Law Strict Liability - Against Railroad Defendants)

90.

Plaintiff realleges paragraphs 1 through 89 of the First Cause of Action and adopts the same as if fully set forth in this Second Cause of Action.

91.

The railroad Defendants engaged in abnormally dangerous business activities involving the production, manufacture, generation, sale, distribution, transportation, and/or use of asbestos products and materials. The railroad Defendants failed to protect Plaintiff from asbestos which escaped from such business activities.

92.

The railroad Defendants' which caused exposure of Plaintiff to asbestos, are abnormally dangerous activities in that:

A.     There exists a high degree of prior, present and continuing contamination in the form of exceedingly toxic asbestos, which created an unacceptable risk of harm to Plaintiff; and

B.     There is a strong likelihood that the harm resulting from prior, present, and future exposure to asbestos is great.

93.

The railroad Defendants are strictly liable for damages asbestos disease cause by said abnormally dangerous activities.

94.

As a direct and proximate result of the railroad Defendants' unlawful and unreasonably dangerous conduct and as a direct and proximate result of their abnormally

dangerous activities, Plaintiff was exposed to hazardous materials, contracted asbestos related disease, and sustained damages.

### THIRD CAUSE OF ACTION

#### (Negligence - Against the State of Montana)

95.

Plaintiff realleges paragraphs 1 through 94 of the Second Cause of Action and adopts the same as if fully set forth in this Third Cause of Action.

96.

Plaintiff was at all times members of the class of persons the above referenced statutes intended to protect from exposure to toxic asbestos dust, found hazardous by the State Board of Health, Division of Disease Control.

97.

At all times pertinent herein, the State owed a continuing duty to Plaintiff to advise him of the results of its studies and research which directly and substantially affected Plaintiff's health and to otherwise take reasonable action to protect and to warn Plaintiff who was at a foreseeable risk of harm.

98.

The State undertook specific action concerning measures purportedly taken to protect workers at said vermiculite mining facilities in Lincoln County, Montana. When the State undertook to inspect and regulate the working conditions at Grace's operation, it assumed a duty to do so with care. Plaintiff and the other workers and their family members were aware of and relied upon the fact that the State was inspecting and overseeing the work conditions at Grace's mining and milling operation. The State had a

duty to conduct inspections and follow up activities in a reasonable manner so as to protect Plaintiff from the dangers the State discovered at Grace's operation.

99.

The State failed to act with due and reasonable care and failed to take sufficient action to protect Plaintiff from known hazards of asbestos exposure.

100.

The State failed to warn Plaintiff of the hazards of asbestos exposure caused by the release of asbestos fibers from the vermiculite mine and mill near Libby, Montana.

101.

The State breached its duties of care to Plaintiff by failing to disseminate asbestos health hazard information to Plaintiff; failing to warn Plaintiff of the hazards associated with exposure to Grace's asbestos contaminated vermiculite; failing to inform Plaintiff, or seeing that Plaintiff was informed, of the asbestosis and cancer risk associated with exposure to Grace's asbestos; failing to enforce its rules and orders against Grace; communicating "confidentially" with Grace regarding the hazards of its workplace thereby approving and assisting with concealment of deadly work conditions; and failing to take any other reasonable action to protect Plaintiff from the grave danger the State discovered and observed for many years at Grace's facilities.

102.

The State's negligence, in addition to that herein above alleged, included:

A.      Failing to correct unsafe conditions;

B.      Failing to warn of the dangers of asbestos;

C.      Permitting the ultrahazardous and dangerous condition to persist;

D.    Failing to warn Plaintiff and the public of the hazards associated with exposure to asbestos contaminated vermiculite;

E.    Failing to disseminate asbestos hazard information to the public;

F.    Failing to inform Plaintiff, or seeing that Plaintiff was informed, of the extreme asbestosis and cancer risk of asbestos contaminated vermiculite; and/or

G.    Failing to enforce and/or comply with rules, orders, and statutes thereby aiding and abetting Grace in the concealment of abnormally dangerous business activities for profit in Lincoln County, Montana.

103.

As a result of the State's negligence and unlawful conduct, Plaintiff was deprived of the opportunity to make an informed decision about where he lived and worked, and Plaintiff was exposed to deadly asbestos contaminated vermiculite dust.  Had the State acted reasonably and had information been timely conveyed to Plaintiff and the public, Plaintiff could have avoided the direct and substantial asbestos exposure which caused his asbestos related disease.

104.

As a direct and proximate result of the State's unlawful conduct, as alleged herein, Plaintiff suffered asbestos related disease, and damages as herein alleged.

## FOURTH CAUSE OF ACTION

### (Breach of Statutory Duties - Against the State of Montana)

105.

Plaintiff realleges paragraphs 1 through 104 of the Third Cause of Action and adopts the same as if fully set forth in this Fourth Cause of Action.

106.

At times relevant herein, the State owed statutory duties to Plaintiff, as set forth herein, regarding the hazardous conditions at W.R. Grace's Lincoln County facilities.

107.

Among other things, the State was statutorily required to investigate and to determine hazards in Montana workplaces, to remedy unsanitary or hazardous conditions in the workplaces, to disseminate information regarding hazardous conditions in the workplaces, and to enforce laws, regulations and orders intended to protect Montana workers, their families, and the public from hazardous work conditions.

108.

The State breached its statutory duties by, among other things, failing to disseminate asbestos health hazard information to Plaintiff; failing to warn Plaintiff of the hazards associated with exposure to Grace's mining operations and asbestos contaminated vermiculite; failing to inform Plaintiff of the extreme asbestosis and cancer risk associated with exposure to Grace's asbestos; and failing to enforce its rules and orders against Grace.

109.

The State communicated "confidentially" with Grace regarding the human health hazards of its workplace, thereby approving and assisting the concealment of deadly work conditions, and failed to take any reasonable action to protect Plaintiff from the grave danger the State discovered and observed over a period of many years at Grace's facilities.

110.

As a direct result of the State's breach of its statutory duties and its unlawful conduct as alleged in this Fifth Cause of Action, Plaintiff suffered injuries, including asbestos related disease, and damages as herein alleged.

## FIFTH CAUSE OF ACTION

### (Civil Aiding and Abetting - Against the State of Montana)

111.

Plaintiff realleges paragraphs 1 through 110 of the Fourth Cause of Action and adopts the same as if fully set forth in this Fifth Cause of Action.

112.

The State knew for many years that the working conditions at Zonolite's and Grace's Lincoln County facilities were extremely hazardous and knew the workers, their families, and the community were being exposed to deadly levels of asbestos.

113.

The State also knew that Grace and Zonolite Company were in fact poisoning the community of Libby, Lincoln County, Montana.

114.

The State also knew for many years that Grace and Zonolite Company were not disclosing to the public the unreasonable nature of their business activities and the grave human health hazard associated with the asbestos contaminated vermiculite they were producing.

115.

Nevertheless, the State aided Grace and Zonolite Company in poisoning and contaminating the community of Libby by affirmatively assisting Grace and Zonolite Company to conceal this enormous health hazard from the public and Plaintiff.

116.

The State generated multiple secret and confidential documents concerning the contamination. The State communicated the contents of those documents only to Grace and Zonolite Company in a concerted effort to insure that the public could not discover the enormous health hazard in Libby.

117.

The State provided substantial assistance and encouragement to Zonolite Company's and Grace's unlawful misconduct related to the enormous human health hazard in Libby by allowing them to continue operating their hazardous facilities for decades and by allowing and assisting with the concealment of the dangerous nature of the operation.

118.

The State aided and abetted Zonolite Company's and Grace's unlawful misconduct and is therefore vicariously liable for their actions and responsible for Plaintiff's resulting injuries and damages which include all of the injuries and damages referred to herein.

119.

As a direct result of the State's aiding and abetting the unlawful misconduct of Grace and Zonolite Company, Plaintiff exposed to deadly asbestos contaminated vermiculite dust. Had the State acted properly and timely conveyed truthful information to Plaintiff and

the public, Plaintiff could have avoided the direct and substantial asbestos exposure which caused him to contract asbestos related disease.

120.

The State's unlawful conduct was a proximate cause of Plaintiff's asbestos related disease.

## SIXTH CAUSE OF ACTION

### (Directing or Permitting Tortious Conduct - Against the State of Montana)

121.

Plaintiff realleges paragraphs 1 through 120 of the Fifth Cause of Action and adopts the same as if fully set forth in this Sixth Cause of Action.

122.

The State controlled and had a duty to use care in controlling the working conditions at the Zonolite Company's and W.R. Grace's facilities in Lincoln County.  Given the hazardous conditions observed at the facilities for many years, it was likely that Zonolite Company and Grace would harm Plaintiff and others if not properly controlled.

123.

The State failed to exercise reasonable care concerning its control of Zonolite Company and Grace by allowing them to continue operating the hazardous facilities for decades and by assisting with concealment of the dangerous nature of the operation.

124.

The State had a nondelegable duty to protect Plaintiff, other mine workers, and their family members from abnormally dangerous workplace hazards and emissions at said vermiculite mine in Lincoln County.  The State breached its duty and conspired with Zonolite Company and Grace to avoid safety responsibilities the State had detected and

observed for decades.  The State acquiesced in the companies' continuing exposure of workers and others to deadly asbestos.

125.

As a direct and proximate result of the State's failure to control Zonolite Company and Grace and the State's decision to leave workplace safety entirely in the hands and under the authority of Zonolite Company and Grace, the State is vicariously liable and jointly and severally liable for Zonolite Company's and Grace's actions and unlawful conduct that caused the asbestos human health hazard Plaintiff's asbestos related disease.

126.

The State is therefore responsible for Plaintiff's resulting injuries and damages which include all of the injuries and damages described herein.

<strong><u>SEVENTH CAUSE OF ACTION</u></strong>

<strong>(Acting in Concert with Grace and Zonolite Company -</strong>

<strong>Against the State of Montana)</strong>

127.

Plaintiff realleges paragraphs 1 through 126  of the Sixth Cause of Action and adopts the same as if fully set forth in this Seventh Cause of Action.

128.

The State acted in concert with Grace and Zonolite Company concerning the asbestos human health hazard in Libby and Lincoln County, Montana, thereby causing the public, workers, their families, and Plaintiff to be exposed to dangerous asbestos.

129.

By virtue of said concerted action with Zonolite Company and W.R. Grace, the State is jointly and severally liable for the conduct of said companies in bringing about Plaintiff's asbestos disease and damages.

130.

As a direct and proximate result of said concerted action, Plaintiff contracted asbestos related disease and suffered damages as herein alleged.

## EIGHTH CAUSE OF ACTION

### (Intentional and Malicious Acts or Omissions - Against All Defendants)

131.

Plaintiff realleges paragraphs 1 through 131 of the Seventh Cause of Action and adopts the same as if fully set forth in this Eighth Cause of Action.

132.

Plaintiff's permanent asbestos related disease and his resulting damages were caused by Defendants' intentional and malicious acts and omissions.

133.

Defendants knew of facts and intentionally disregarded facts creating a high probability of injury to Plaintiff; deliberately proceeded to act in conscious and intentional disregard of high probability of injury to Plaintiff; and deliberately proceeded to act with indifference to the high probability of injury to Plaintiff.

134.

As a direct and proximate result of Defendants' intentional and malicious acts or omissions, Plaintiff developed asbestos related disease and sustained damages.

## COMPENSATORY DAMAGES

### 135.

As a direct result of Defendants' unlawful conduct, Plaintiff has incurred medical expenses and will continue to incur medical expenses in the future.

### 136.

As a direct result of Defendants' unlawful conduct, Plaintiff has experienced lost earnings to date and loss of earning capacity that will continue into the future.

### 137.

As a direct result of Defendants' unlawful conduct, Plaintiff has experienced great physical and mental pain and suffering and will suffer further physical and mental pain and suffering in the future.

### 138.

As a direct result of Defendants' unlawful conduct, Plaintiff has suffered loss of and damage to his established course and way of life.

### 139.

As a direct result of Defendants' unlawful conduct, Plaintiff sustained damages relating to relating to his emotional distress.

## PUNITIVE AND EXEMPLARY DAMAGES

### 140.

Defendants' unlawful conduct was so malicious, wanton, and egregious as to justify the imposition of punitive or exemplary damages against all defendants other than the State of Montana, in an amount sufficient to punish said Defendants, to serve as an example to said Defendants and other similarly situated entities, to discourage and to

prevent future conduct of the kind engaged in by Defendants, and to demonstrate conclusively that conduct of this kind is unacceptable and intolerable in our society.

### JURY DEMAND

Plaintiff demands trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants for damages including the following:

1.     Reasonable compensation for medical and related expenses;

2.     Reasonable compensation for lost earnings and loss of earning capacity;

3.     Reasonable compensation for mental and physical pain and suffering;

4.     Reasonable compensation for Plaintiff's loss of enjoyment of life;

5.     Reasonable compensation for Plaintiff's emotional distress;

6.     Punitive damages against Defendants other than the State in sufficient amount to punish and to serve as example that such conduct is intolerable.

7.     Costs and disbursements incurred herein; and

8.     Such other and further relief as to the court may seem just.

DATED this 11th day of January, 2018.

KOVACICH SNIPES, P.C.

By: _____
　　　Ross T. Johnson
　　　P.O. Box 2325
　　　Great Falls, MT  59403
　　　Attorneys for Plaintiff